# In the United States Court of Federal Claims

No. 14-242C
(Filed:  September 26, 2014)

|  |  |  |
|---|---|---|
| CFS INTERNATIONAL CAPITAL CORPORATION, | ) ) ) ) | **Motion to dismiss for failure to state a claim; breach of contract; breach of implied covenant of good faith and fair dealing; Import-Export Bank.** |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) |  |

*Chrys D. Lemon*, Washington, DC, for plaintiff. *Adam D. Maarec*, Washington, DC, of counsel.

*David A. Levitt*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, and *Robert E. Kirschman, Jr.*, Director, Commercial Litigation Branch, for defendant. *John G. Connor*, Export-Import Bank of the United State, Washington, DC, of counsel.

**OPINION ON MOTION TO DISMISS**

**FIRESTONE**, *Judge*.

This case concerns the interpretation of a document assigning the proceeds of an insurance policy issued by defendant Export-Import Bank of the United States ("Ex-Im Bank" or "government" or "defendant") to plaintiff CFS International Capital Corporation ("CFS" or "plaintiff").  CFS alleges that the Ex-Im Bank committed a breach of contract and a breach of the implied covenant of good faith and fair dealing when it denied CFS's claim under the assignment agreement.  Pending before the court is

1

defendant's motion to dismiss both counts for failure to state a claim pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons that follow, this court **DENIES** the government's motion to dismiss with respect to CFS's breach of contract claim and **GRANTS WITHOUT PREJUDICE** the government's motion to dismiss the claim for breach of the implied covenant of good faith and fair dealing.

## I.     FACTUAL BACKGROUND

The following facts, as alleged in the CFS's complaint, are presumed true for the purpose of the defendant's motion to dismiss.  See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (citations omitted).

The Ex-Im Bank is an agency of the United States government that, among other things, provides insurance to businesses selling goods made in the United States to other countries.[1]  CFS is a California corporation that finances small business exporters. As part of their business, CFS uses the Ex-Im Bank to insure their export sales.  See 12 U.S.C. § 635.  In 2011, CFS provided financing to U.S. exporter TopMeat Trading, LLC ("TopMeat") to enable TopMeat to export its goods to four buyers in Mexico for

---

[1] The general provision of the powers and functions of the Ex-Im Bank reads in relevant part:
   (a) General banking business; use of mails; publication of documents, reports, contracts, etc.; use of assets and allocated or borrowed money; payment of dividends; medium-term financing; dissemination of information; enhancement of medium-term program.
      (1) There is created a corporation with the name Export-Import Bank of the United States, which shall be an agency of the United States of America.  The objects and purposes of the Bank shall be to aid in financing and to facilitate exports of goods and services, imports, and the exchange of commodities and services between the United States or any of its territories or insular possessions and any foreign country or the agencies or nationals of any such country, and in so doing to contribute to the employment of United States workers.
12 U.S.C. § 635.

2

$112,000 at an annual interest rate of 7%. As a condition of the financing, CFS required TopMeat to purchase an export credit insurance policy from Ex-Im Bank and to assign the proceeds of the policy to CFS. TopMeat purchased such a policy in July of 2011. See Compl. Ex. A., Short Term Multi-Buyer Express Insurance Policy No. ENB-509753 ("Policy"). In July of 2012, the Policy and the Assignment were both renewed for another year.

The Policy provides that Ex-Im Bank will cover 95% of TopMeat's losses if a foreign buyer defaults on payment for TopMeat's products. In April of 2012, TopMeat and Ex-Im Bank executed an agreement assigning the proceeds of the Policy to CFS. See Compl. Ex. B, Enhanced Assignment of Policy Proceeds Agreement ("Assignment"). The Assignment states that the Ex-Im Bank agrees to pay CFS "regardless of the Insured's performance under the Policy," provided that "[t]he Assignee has complied with all of its obligations under this Agreement." Assignment § D.1.a. However, if the insured has not complied with the terms of the Policy, "the amount paid by Ex-Im Bank will be the outstanding amount financed, not to exceed 95% of the insured's receivables . . . ." Assignment § E.2.

In order to recover on the Policy, TopMeat was required, among other things, to provide "bill of lading(s) or other shipping document(s) showing shipment of the products from the United States . . . to the buyer in the buyer's country. . . . " Policy § 3.E. These documents "must be issued by an unaffiliated third party." Id. However, the Policy treats exports of goods to Canada and Mexico differently from exports to all other countries:

> Notwithstanding the foregoing requirement with respect to shipping documents:  . . . if the *buyer's* country is either Mexico or Canada, *you* [insured exporter] may ship to a point in the United States from which, to the best of *your* knowledge, the *products* are intended for ultimate delivery to Mexico or Canada, respectively, provided that: (1) *you* have written instructions from the *buyer* directing delivery to the *buyer* or the designated agent of the *buyer* at named point in the United States and (ii) *your* shipping document(s) evidence delivery to the point in the United States specified in the written instructions.

Id. at III.E.3.  Under this section of the agreement, an exporter to Canada or Mexico is not required to provide documents issued by a third party as evidence that the goods were shipped out of the United States.  Instead, the exporter need only submit its own documents showing that the goods were shipped to a point within the United States from where the goods would then be exported to Canada or Mexico.

According to CFS, the exception for Canada and Mexico was included in the Policy because under industry custom and practice, international bills of lading are not issued when shipping goods from the United States to Mexico or Canada.  Compl. ¶¶18-19.  CFS asserts that U.S. trucking companies typically deliver goods to an agent of the Mexican buyer on the U.S. side of the border using a domestic bill of lading.  Compl. ¶ 19.  The agent then arranges for the goods to be delivered a short distance across the border by truck without an international bill of lading.  Id.  Because many Mexican buyers are not licensed to directly receive goods once they are transported across the border, the buyer will hire a licensed third party company as the "importer of record" on behalf of the buyer.  Id.  CFS asserts that due to the prevalence of these practices, it would be impossible to obtain an international bill of lading for goods shipped to Mexico because none would ever been produced. Pl.'s Opp. at 12.

However, the Assignment directing the proceeds of the Policy be paid to CFS is worded slightly differently and does not contain an express exception for exports to Canada and Mexico. Instead, the Assignment states that CFS must produce, among other things, a "bill of lading (or other shipping documents) identifying the Insured and the Buyer and evidencing the export of the products shipped . . . ." Assignment § C.2.c. The Assignment also does not contain the requirement of Policy § 3.E that these documents be issued by an unaffiliated third party.

In May, June, and July 2012, TopMeat entered into agreements with four Mexican buyers to export goods to Mexico. Each shipment was evidenced by a domestic bill of lading and the Mexican buyer's written acknowledgement of receipt of the goods in Texas. The shipping documents also included the buyer's stated intention to transport the goods to Mexico. However, according to CFS, TopMeat never received payment from the Mexican importers. TopMeat filed a claim under the Policy, but the Ex-Im Bank denied TopMeat's claims because Ex-Im Bank found that the claims were based on fraudulent documentation. Compl. ¶ 12.

After the Ex-Im Bank denied TopMeat's claim, CFS filed a claim with the Ex-Im Bank pursuant to the assignment agreement. The Ex-Im Bank found that CFS "was not able to provide a bill of lading evidencing the export of the products shipped," which, in their view, mean that CFS had not provided documentation required by the Assignment § C.2.c. Compl. Ex. C. Consequently, Ex-Im Bank denied CFS's claim and refused to pay on the Assignment.

CFS appealed the initial denial to Ex-Im Bank's Claims Reconsideration Committee. CFS does not dispute that it does not have an international bill of lading, but argued that it does not need that document to prove its claim. CFS provided a number of documents to the Ex-Im Bank that CFS argues satisfy the Assignment's requirement to produce "other shipping documents" evidencing export.[2] CFS contends that these documents satisfy the insured's obligations to recover under the Policy's exception for shipping goods to Canada and Mexico, and that the Policy's requirements are incorporated by reference into the Assignment.

The Reconsideration Committee upheld the initial decision to deny the claim in a letter issued September 27, 2013. The government took the position that none of the documents CFS produced are "evidence of export" as defined by the Assignment, and therefore, CFS cannot recover under the terms of the Assignment agreement. CFS filed its complaint in this case on March 28, 2014.

## II.   STANDARD OF REVIEW

The standard for a motion to dismiss for failure to state a claim under RCFC 12(b)(6) is well-settled. To avoid dismissal for failure to state a claim under RCFC 12(b)(6), the complaint must contain facts sufficient to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine whether a complaint states a plausible claim for relief, a court must engage in a context-specific analysis and "draw on

---

[2] Specifically, CFS submitted instructions from the Mexican buyers to deliver the goods to a town on the Texas-Mexico border, a domestic bill of lading, and an acknowledgment from the buyers' agents showing receipt of the goods in Texas.

its judicial experience and common sense." Iqbal, 556 U.S. at 679.  In considering a motion under RCFC 12(b)(6), "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing Papasan v. Allain, 478 U.S. 265, 283 (1986); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

### III. DISCUSSION

The government argues that CFS has failed to state a claim for breach of contract and breach of the implied duty of good faith and fair dealing claims on the grounds that under the express terms of the Assignment, CFS does not have the shipping documents necessary to support any claim for relief.  According to the government, the Assignment requires CFS to provide the Ex-Im Bank with certain shipping documents, which CFS cannot produce.  The government argues that regardless of whether the Policy exempted TopMeat from producing evidence of actual export to Mexico with a bill of lading or other similar document to obtain insurance, CFS had agreed to produce documents proving export in order to collect under its Assignment.  The government does not dispute that the Policy and Assignment must be read together.  In its reply brief, the government states that "[c]ombined with the Policy, the Enhanced Assignment is fully integrated . . . ." Def.'s Reply at 15.  According to the government, however, the Assignment unambiguously requires proof of actual export through a bill of lading or other similar shipping document to support a claim and that there is no exception for goods exported to Canada or Mexico in the Assignment agreement.  Essentially, the

7

government contends that the Assignment does not to give CFS the right to collect with the same documentation TopMeat must present to state a claim under the Policy.

In response, CFS argues that because the Policy and Assignment must be read together, the term "shipping documents" in the Assignment must be read consistent with the requirements for "shipping documents" in the Policy regarding exports to Mexico and Canada. CFS argues that the Policy plainly expands upon the phrase "shipping documents evidencing export" in the Assignment with regard to goods that are destined for Mexico or Canada. Therefore, CFS contends, the Policy and Assignment together allow CFS prove export to Mexico under the assignment using the same documents required by the Policy. CFS further argues that its reading is confirmed by the custom and practice for goods exported to Mexico.

### A. Plaintiff Has Stated a Claim for Breach of Contract

The court begins with a review of the rules for interpreting contracts. Under New York law,[3] "'all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties.'" TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 89 (2d Cir. 2005) (alteration in original) (quoting This is Me, Inc. v. Taylor, 157 F.3d 139, 143 (2d Cir. 1998)). When interpreting a "contract or multiple contracts in a transaction," the court must "strive to give effect to all of the terms of the relevant documents, reading them together." Kelso Enters. Ltd. v. A.P. Moller–

---

[3] The Assignment provides that New York law governs the construction of the contract. See Assignment § G.6.

Maersk A/S, 375 F. App'x. 48, 49 (2d Cir. 2010) (summary order) (citing Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 111 (2d Cir. 2008))

If the language of a contract is unambiguous, it must be given its plain meaning. See, e.g., Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co., 957 F. Supp. 2d 316, 330 (S.D.N.Y. 2013) (citations omitted). However, this does not mean that the court is barred from considering all extrinsic evidence without first finding that a term is ambiguous. A contract term "must be construed according to the custom and use prevailing in a particular trade." Little v. Landsman Dev. Corp., --F. Supp. 2d.--, 2014 WL 2535023 (W.D.N.Y. June 5, 2014) (quoting Seven Star Shoe Co., Inc. v. Strictly Goodies, Inc., 657 F. Supp. 917, 921 (S.D.N.Y. 1987). Therefore, when "determining whether language in a contract is ambiguous, a court considers 'the customs, practices, usages and terminology as generally understood in the particular trade or business.'" Jordan v. Can You Imagine, Inc., 485 F. Supp. 2d 493, 503 (S.D.N.Y. 2007) (citing Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996)); see also Hunt Constr. Group v. United States, 281 F.3d 1369, 1373 (Fed. Cir. 2002) (noting that "evidence of trade practice may be useful in interpreting a contract term having an accepted industry meaning different from its ordinary meaning—even where the contract otherwise appears unambiguous") (citations omitted).

Tested by these standards, the court finds that the government's argument based on the plain language in the Assignment is not well-supported. There is no question that the Policy and the Assignment must be read together, as the defendant concedes. See Def.'s Reply at 8 n.4 ("Even though they are separate contracts, the Enhanced

Assignment and Policy are clearly interconnected and, therefore, should be interpreted consistently with one another."). The Assignment refers to the Policy numerous times and relies on language in the Policy to establish and define key rights and obligations under the Assignment. Therefore, it is "both good sense and good law that these closely integrated and nearly contemporaneous documents be construed together." See Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S, 907 F. Supp. 2d 401, 413 (S.D.N.Y. 2012) (quoting Gordon v. Vincent Youmans, Inc., 358 F.2d 261, 263 (2d Cir. 1965) (internal quotation marks omitted)).

The language of the Policy is particularly relevant if, as CFS claims, prevailing trade practices make it impossible for CFS to obtain the documents the Ex-Im Bank requires. This case presents one of the rare circumstances where, as discussed above, a court may consider extrinsic evidence before finding that a contract term is ambiguous. A court may consider evidence of custom and usage when necessary to become "informed of the meaning of the language as generally understood in the business." Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010) (citing Fox Film Corp. v. Springer, 273 N.Y. 434, 8 N.E.2d 23 (1937)). In this connection, the court may look to evidence of custom and trade practice to determine what shipping documents are generated for shipments to Mexico and Canada.[4]

---

[4] The plaintiff has submitted an affidavit from Ralph Clumeck, President of CFS, which states that the custom and trade practice has evolved to where international bills of lading generally are not used for commercial transactions involving the export of goods from the United States to Mexico. The government will have the opportunity to respond to this affidavit in the merits phase of this case.

Despite acknowledging that the two contracts must necessarily be read together, the government nevertheless insists that the language in the Policy has no bearing on the "clear and plain language" of § C.2.c of the Assignment, which requires CFS to produce "A bill of lading (or other shipping documents) identifying the Insured and the Buyer and evidencing the export of products shipped."[5] It is undisputed that when goods are shipped to Mexico, the Policy requires the insured to provide different documents than those usually required for goods exported to other countries. See Policy § 3.E.3. If, as defendant suggests, the court read § C.2.c in a vacuum without reference to the Policy it incorporates, the Policy holder would be able to collect under the Policy with one set of documents while the party assigned the proceeds of the Policy would need a different set of documents. Contrary to the government's assertion, this result makes little sense.[6] See Chesapeake, 957 F. Supp. 2d at 334 ("A court should not interpret a contract in a way that would be 'commercially unreasonable, or contrary to the reasonable expectations of the parties.'" (quoting Samba Enters., LLC v. iMesh, Inc., 06-cv-7660, 2009 WL 705537, at *5 (S.D.N.Y. Mar. 19, 2009). Therefore, the court cannot ignore the Policy's language regarding the required documents for goods destined for Mexico and Canada when construing terms "other documents" in the Assignment.

---

[5] In its motion to dismiss, defendant repeatedly quotes Assignment § C.2.c as requiring "a bill of lading . . . evidencing export," omitting the parenthetical "(or other shipping documents)" and implies that only a bill of lading may satisfy CFS's obligations under the Assignment. See, e.g., Def.'s Mot. to Dis. at 1, 7, 13, 15, 18.

[6] At oral argument, counsel for the government argued that the different language in the policy was put in place to prevent the "moral hazard" that would arise if it were possible for the assignee to collect on the policy using forged documents. The government will have an opportunity to present evidence regarding the significance of the different wording between the two documents in the merits portion of this case.

Viewing the allegations in the complaint in the light most favorable to the plaintiff, this court disagrees with the government that, as a matter of law, the documents plaintiff has submitted are not "shipping documents . . . evidencing export." Consequently, the government's motion to dismiss plaintiff's breach of contract claim on the grounds that plaintiff does not have the required documents is denied.

**B.    Plaintiff's breach of good faith and fair dealing claim must be dismissed for failure to state a claim.**

CFS argues that the government breached the implied covenant of good faith and fair dealing by "failing to meet the reasonable and justified expectations of CFS, refusing to cooperate with CFS in good faith, failing to provide any rationale for its claim denial, and refusing in bad faith to pay CFS under the [Policy] and [Assignmnent]." Compl. ¶ 34. The government counters that CFS has not alleged any facts supporting a claim for breach of the duty of good faith and fair dealing, arguing that the Ex-Im Bank followed all appropriate procedures when it considered CFS's documents and found them inadequate to support the claim.

Under New York law, all contracts include an implied covenant of good faith and fair dealing. See, e.g., 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (N.Y. 2002). The covenant "ensures that neither party may destroy or injure 'the right of the other party to receive the fruits of the contract.'" Security Plans, Inc. v. CUNA Mut. Ins. Soc., 261 F.R.D. 4, 9 (W.D.N.Y. 2009) (quoting Dalton v. Educ. Testing Service, 87 N.Y.2d 384, 389 (N.Y. 1995)); see also Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005) ("The covenant imposes obligations on both

contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." (citing Restatement (Second) of Contracts § 205 (1981)) (other citations omitted)).

Breach of the duty of good faith and fair dealing is a theory of breach of the underlying contract, not a separate cause of action. See, e.g., Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 80 (2d Cir.2002). In order to avoid redundant claims, a plaintiff "may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (citing Deutsche Bank Sec. Inc. v. Rhodes, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008)). In that connection, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d. Cir. 2013) (citing L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 434 n.17 (2d Cir. 2011)).

In this case, CFS has not alleged any facts supporting a claim for breach of the implied duty of good faith and fair dealing separate from its breach of contract claim. There are no allegations of fact other than that the Ex-Im Bank refused to pay plaintiff based on the documents CFS provided. These allegations form the same factual predicate as plaintiff's claim for breach of contract. See ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be

13

dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract."). Plaintiff's breach of contract claim encompasses the entirety of plaintiff's claims and resolution of that claim alone resolves all of the issues in the case.  In such circumstances, plaintiff's claim of breach of good faith and fair dealing must be dismissed.

## IV.     CONCLUSION

For the above stated reasons, the government's motion to dismiss plaintiff's breach of contract claim is **DENIED**. The facts presented in the complaint present a plausible basis for recovery.  However, plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing and thus the government's motion with regard to this claim is **GRANTED WITHOUT PREJUDICE**.  If, as the facts of this case develop, plaintiff is able to state a claim for breach of the covenant of good faith and fair dealing based on a different factual predicate, CFS may move to amend to reinstate this count.  Thus, the court **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion to dismiss for failure to state a claim. The government shall file its answer by **Thursday, October 16, 2014**

**IT IS SO ORDERED.**

s/Nancy B. Firestone<br>
NANCY B. FIRESTONE<br>
Judge